IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ALICE M. DORN                                                                             PLAINTIFF

v.                              5:08CV00291 BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,                                            DEFENDANT

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff, Alice M. Dorn, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance benefits. Both parties have submitted appeal briefs, and the case is ready for decision.[1]

**I.    ADMINISTRATIVE PROCEEDINGS**

The Plaintiff filed an application for disability insurance benefits on October 20, 2004, alleging disability since May 15, 2004. (Tr. 37-39) Her claims were denied initially and upon reconsideration. (Tr. 27-29, 31-32) At the Plaintiff's request, a hearing was held before an Administrative Law Judge[2] ("ALJ"). After the hearing, at which Plaintiff, her sister, and a vocational expert testified, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through February 7, 2007, the date of his decision. (Tr. 16-17) On September 12, 2008, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-5) Plaintiff then filed her complaint initiating this appeal. (Docket #2)

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #11)

[2] The Honorable Everet Dail Stiles.

## II. STANDARD OF REVIEW

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and is free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); see also 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

The Court must consider both evidence that detracts from and evidence that supports the Commissioner's decision. *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007). However, if substantial evidence supports the decision, then the court may not reverse, "even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *England*, 490 F.3d at 1019. Thus, the only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial evidence.

Under the Social Security Act, "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff alleged that she was limited in her ability to work by breast cancer and high blood pressure. (Tr. 86) She was fifty-nine years old at the time of the hearing. (Tr. 264) She is a high school graduate with three years of college. *Id.* She has past relevant work as

a customer service representative for a telephone company. (Tr. 15, 57-59, 78-79, 87-88, 93-95)

III.   **ALJ'S DECISION**

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled an impairment listed in the Listing of Impairments in Appendix 1, Subpart P, 20 C.F.R. Part 404; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from doing past relevant work. If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

The ALJ found that Plaintiff was last insured for the purposes of Disability Insurance benefits December 31, 2005.[3] (Tr. 10, 12) He found she had not engaged in substantial gainful activity since her alleged onset date. (Tr. 12) He found that Plaintiff had "severe" impairments, diabetes mellitus and the residual effects of treatment for breast cancer. *Id.* He found she did not have an impairment or combination of impairments that met or equaled a Listing. (Tr. 13) He judged that Plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible. *Id.*

The ALJ found that Plaintiff retained the residual functional capacity for a wide range of sedentary work. *Id.* He determined she was unable to perform her past relevant work. (Tr. 15) Based on the testimony of a vocational expert witness in response to a hypothetical question, the ALJ found that there were a significant number of jobs in the economy which

---

[3] In order to receive Disability Insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. 42 U.S.C. §§ 416(i), 423(c) (1991); *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998); *Battles v. Sullivan*, 902 F.2d 657, 659 (8th Cir. 1990).

Plaintiff could perform, notwithstanding her limitations, for example, bookkeeper or accounting clerk. (Tr. 16) Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

IV. **DISCUSSION**

Plaintiff argues the ALJ's decision is not supported by substantial evidence because he failed to grant proper weight to the side effects of her medications. (Br. 5-8) Plaintiff testified that her medications made her incoherent and unfocused. (Tr. 267) She testified that if she sat for more than thirty minutes, she would go to sleep (Tr. 268, 271), and that she was always "very, very tired." (Tr. 265) She points out that a treatment notation by Asif Masood, M.D., a treating oncologist, reflects that she has been treated in the past with Elavil which caused, "a significant amount of sedation" so she did not want to take it again. (Tr. 235) Dr. Masood planned to try Neurontin and perhaps Lyrica to see if they would create a similar problem. His note is dated July 25, 2006, almost eight months after the relevant time period. *Id.*

> In his opinion, the ALJ addressed Plaintiff's contentions:
>
> With regard to aggravating factors and functional limitations, the claimant testified at the hearing that she is unable to lift more than a gallon of milk, cannot walk more than half a mile at a time, can sit for no more than 30 minutes at a time, and she requires 2-3 naps per day (which may last up to 2 hours each). However, it does not appear that any physician has placed this level of limitation upon the claimant, and there are no clinical findings in the record that corroborate this claim of extreme limitation. In fact, the medical evidence indicates that the claimant remains capable of performing sedentary work, with the additional limitations described above.

(Tr. 14)

Plaintiff's testimony of significant side effects of medication is inconsistent with the fact that, during the relevant time period, she never discussed side effects[4] with her physicians and never asked for modification of the medication. *Barrett v. Shalala*, 38 F.3d

---

[4] Except for Elavil, which she was no longer taking. (Tr. 239)

4

1019, 1023 (8th Cir. 1994); see *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). It follows that, if she addressed such concerns outside the relevant time, she would have done so during the relevant time, especially if the side effects were as significant as her testimony indicated.

Plaintiff underwent surgery for cancer of her left breast July 7, 2004. (Tr. 112) On July 19, 2004, she felt well and essentially had normal strength and energy. (Tr. 163) July 26, 2004, she reported no new problems or complaints; she looked well; and she was to begin chemotherapy the following week. (Tr. 162) A follow-up note August 16, 2004, indicated she tolerated the first cycle of her chemotherapy well; she had "some fatigue and tiredness for a couple of days but she is back to her normal usual self." (Tr. 161)

August 23, 2004, Plaintiff reported having "a little queasy, nauseous stomach" after her treatment. (Tr. 160) By September 13, 2004, she had completed her second cycle of chemotherapy; she reported that she tolerated it "extremely well." (Tr. 159) On October 4, 2004, after her third round of chemotherapy, Plaintiff denied any significant complaints. (Tr. 158) On October 25, 2004, she complained of severe fatigue and tiredness after her last round of chemotherapy, but was feeling a little better. (Tr. 156) She was regaining some strength and energy. *Id.*

On November 11, 2004, Plaintiff was doing well and reported no problems; she still had more adjuvant therapy left. (Tr. 120, 230[5]) By November 16, 2004, she had started on a second chemotherapy drug. She tolerated the first round of this course of treatment "pretty well without any nausea, vomiting, numbness or tingling." (Tr. 155) December 7, 2004, she reported "some numbness and tingling off and on in her fingers" following chemotherapy, but otherwise she was "doing well." (Tr. 154) December 28, 2004, she denied weakness in

---

[5] There is some duplication of the record.

any limb or paresthesia[6] or tingling sensations in the body. (Tr. 153) On January 11, 2005, she reported that she felt "pretty good." Her appetite was good, but her energy level was poor. (Tr. 137)

By January 20, 2005, Plaintiff had completed her chemotherapy. (Tr. 152) Again, she denied weakness in any limb or paresthesia sensations in her body. *Id.* February 10, 2005, she reported she was doing well, but had some left finger pains when her arm swelled. (Tr. 229)

In early March, 2005, Plaintiff developed some numbness and tingling of her left fingers after about four weeks of radiation treatment. (Tr. 136) By March 24, 2005, she had completed radiation treatment. (Tr. 151) She reported numbness and tingling in her fingertips. *Id.* Her strength and energy had been improving and were "pretty good." *Id.*

In early April, 2005, she was doing well; she had no neurologic symptoms. (Tr. 135) April 7, 2005, she was doing well. (Tr. 228) Her energy level was "pretty good and improving." *Id.* May 12, 2005, she was doing well; she reported no problems. (Tr. 227) August 15, 2005, she was doing "ok," but she had some minor aches and pains. (Tr. 226)

On July 11, 2005, Plaintiff had no complaints; she denied weakness in any limb or paresthesia or tingling sensations in the body. (Tr. 241) November 14, 2005, she had numbness and tingling in her fingers and toes. Those symptoms were getting better, but were not completely gone. (Tr. 239) Otherwise, she had done well. *Id.* She had some increasing generalized fatigue and tiredness, but was able to take care of herself and "do pretty much whatever she needs to do. She couldn't tolerate Elavil well which was given to her last year." When she returned in four months, her doctor would consider Neurontin[7] if

---

[6] A spontaneous abnormal usually not painful sensation (*e.g.* burning, pricking). PDR Medical Dictionary 1425 (3d ed. 2006).

[7] Neurontin has an analgesic effect. Physicians' Desk Reference 2462 (62nd ed. 2008).

her peripheral neuropathy was not better. (Tr. 239-40) February 16, 2006, she was doing well and reported no problems. (Tr. 225)

In December of 2004, while she was still taking chemotherapy, Plaintiff completed a Function Report- Adult. (Tr. 67-74) She indicated that she groomed without assistance, did laundry, cooked, and drove (Tr. 67); she paid her mother's bills and took her to doctors' appointments (Tr. 68); she changed beds, did light cleaning, washed dishes and folded clothes (Tr. 69); she went grocery shopping and could pay bills, count change, handle a savings account and use a checkbook/money orders (Tr. 70); she talked on the phone daily, regularly attended church and occasionally received visitors (Tr. 71); she could pay attention as long as necessary (Tr. 72). Based on the record, the ALJ's discounting of Plaintiff's complaints of significant side effects from her medications is supported by substantial evidence.

Plaintiff also contends that the ALJ's decision is not supported by substantial evidence because it did not contain rationale supporting a conclusion that she did not meet a Listing. (Br. 9-10) The ALJ's lack of elaboration of his conclusion that Plaintiff did not meet a Listing does not require reversal where, as here, the record supports the ALJ's conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006); *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001). Plaintiff has the burden of showing that she met a Listing. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004); *Pyland v. Apfel*, 149 F.3d at 877. She did not meet that burden.

This Court cannot review the evidence and make an independent decision. Neither may it reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g. Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

7

## V. CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; see also *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's complaint with prejudice.

IT IS SO ORDERED, this 14th day of January, 2010.

_____
UNITED STATES MAGISTRATE JUDGE